IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JULIE A. SU, *Secretary of Labor*,
*United States Department of Labor*,

                Plaintiff,

v.                                    CIVIL ACTION NO. 2:24-cv-00224

BEN'S CREEK OPERATIONS WV LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Acting Secretary of Labor's* Ex Parte *Motion for Temporary Restraining Order* (Document 2), the *Memorandum in Support of Plaintiff's Application for Temporary Restraining Order* (Document 2-6), as well as all attached exhibits. The Secretary seeks an *ex parte* temporary restraining order preventing the Defendant from introducing into commerce any "hot goods," including a quantity of coal, produced in violation of the FLSA's minimum wage and overtime compensation requirements. For the reasons stated herein, the Court finds the motion should be granted in part and denied in part.

**FACTUAL BACKGROUND & PROCEDURAL HISTORY**[1]

The Defendant, Ben's Creek Operations WV LLC ("Ben's Creek"), is a Delaware limited liability company in the business of selling metallurgical coal. Specifically, Ben's Creek operates

---

[1] The facts recounted herein are drawn from the declarations and other exhibits submitted by the Plaintiff, as well as the allegations contained in the complaint.

surface and underground coal mines, a "prep" plant for the washing and preparation of coal for sale, and a rail loadout in West Virginia for transporting coal via a Norfolk Southern railroad line.

The following facts are drawn from the Declaration of Justin Williams, a Wage and Hour Investigator in the Charleston Area office of the United States Department of Labor, Wage and Hour Division. (*See generally* Williams Declaration) (Document 2-4.) According to Mr. Williams, Ben's Creek laid off 44 of its 77 employees on April 9, 2024. On April 14, 2024, Ben's Creek filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of West Virginia.[2] The petition was filed one day following the conclusion of the pay period running from March 31, 2024 through April 13, 2024 (the "Relevant Period"), and five days before the April 19, 2024 payroll date for hours worked during the Relevant Period, including those hours worked by the employees laid off on April 9.

On April 17, 2024, Ben's Creek filed a motion in the bankruptcy action seeking, in part, authorization to make payments of prepetition employee wages, salaries, and other compensation. Attached to the motion was a Declaration of Ben's Creek CEO Christopher S. Walker, in which Mr. Walker acknowledged that Ben's Creek owed approximately $325,000 in wages for work performed during the Relevant Period, and that Ben's Creek had adequate cash in hand as of April 17 to adequately fund the payroll and timely pay employees on April 19.

On April 18, 2024, the United States Trustee filed an objection to the payment of prepetition wages and benefits owed to the laid off employees. That same date, the Bankruptcy Court entered an interim order granting Ben's Creek's motion in part but prohibiting payment of the wages and other benefits pending a final hearing on the motion scheduled for May 8, 2024.

---

2 The bankruptcy action is *In re Ben's Creek Operations WV LLC*, Case No. 2:24-bk-20079.

Accordingly, Mr. Williams conducted a site visit on April 22, 2024, to interview employees, request payroll records, observe operations, and determine whether any "hot goods" had entered commerce. Section 215(a)(1) of the Fair Labor Standards Act (FLSA) prohibits the transportation, offering for transportation, shipment, delivery, sale, or other placement into commerce of any "hot goods," or those goods worked on, processed, or produced by any employee whom an employer has failed to pay the statutory minimum wage or overtime premium rate. *See* 29 U.S.C. § 215(a)(1). During his site visit, Mr. Williams observed approximately 40,000 tons of coal produced by Ben's Creek employees and which Mr. Walker valued at approximately 3 to 4 million dollars. Photographs taken by Mr. Williams show the coal stockpiled at the Ben's Creek Glen Alum prep facility in Matewan, West Virginia. (Documents 2-1, 2-2.) During his interviews with employees, Mr. Williams confirmed that employees had performed work during the Relevant Period for which they had not yet been paid. One employee stated that, on average, employees worked more than 40 hours in a workweek and were not paid for such work. Employees further confirmed that approximately four trainloads of coal were awaiting transport at Glen Alum and that such coal had been produced and prepared by employees who had not been paid for that work.

Ben's Creek has represented in the bankruptcy action that it intends to continue business operations and sell its assets as part of its bankruptcy strategy. On April 22, 2024, Mr. Williams provided a letter notice to Mr. Walker as CEO of Ben's Creek informing him that the company was in violation of the FLSA for failure to pay its employees for hours worked during the Relevant Period, and that any goods produced during the Relevant Period constituted "hot goods." The

same day, Mr. Walker advised that Ben's Creek would not agree to pay the prepetition wages owed in light of the pending bankruptcy proceedings.

Accordingly, the Plaintiff Acting Secretary of Labor seeks to enjoin Ben's Creek from violating Sections 6, 7, 15(a)(1), and 15(a)(2) of the FLSA, and to recover the total amount of back wages owed to any employees under the FLSA and an equal amount due to the employees in liquidated damages. Relevant here, the Secretary also seeks a temporary restraining order, preliminary injunction, and permanent injunction to prevent Ben's Creek from further violating the FLSA by introducing into commerce in any way, any hot goods including the stockpiled coal, produced in violation of the FLSA. The Court notes that the Secretary is presently seeking the same relief from the Bankruptcy Court.

## APPLICABLE LAW

The Secretary seeks an *ex parte* temporary restraining order ("TRO") without notice to Ben's Creek. "*Ex parte* temporary restraining orders are no doubt necessary in certain circumstances" to preserve the status quo and prevent irreparable harm until a hearing can be held. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). Rule 65(b)(1) of the *Federal Rules of Civil Procedure* provides that a TRO may be issued without notice to the adverse party

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

**DISCUSSION**

The Secretary requests that a temporary restraining order be issued pending a hearing on the request for preliminary injunction, citing concern that Ben's Creek is in the position to initiate transport of hot goods coal into interstate commerce in violation of the FLSA. In support of her motion for preliminary relief, the Secretary argues that she is likely to succeed on the merits because Ben's Creek has admitted in the bankruptcy proceedings that it failed to pay wages for the Relevant Period and failed to pay employees on their regular pay day. The Secretary further asserts that, while she need not show irreparable harm due to the FLSA's authorization of injunctive relief, she will suffer irreparable harm absent issuance of a TRO because she will be unable to effectively enforce the FLSA against Ben's Creek. In addition, she asserts that Ben's Creek employees will likewise suffer irreparable harm if they continue to experience delay in receiving back pay. Because the Secretary and employees would be harmed absent preliminary relief, and Ben's Creek would only bear the burden of an injunction until such time as it removes the taint from the hot goods by complying with the FLSA, the Secretary contends the balance of equities favors entry of a temporary restraining order and preliminary injunction. Finally, the Secretary asserts that the public interest in enforcing the FLSA, particularly the mandate to keep out of the marketplace goods produced under substandard labor conditions, counsels in favor of the requested relief.

The Court finds that the circumstances do not rise to a level of immediacy necessitating *ex parte* temporary relief pending a hearing on the Secretary's request for a preliminary injunction. Although adequate efforts have been made to notify the Defendant, the facts in the record do not *clearly show* that immediate and irreparable injury, loss, or damage will result to the Secretary in

the interim. Specifically, the Secretary alleges in the Complaint that the Defendant attempted to transport the coal across state lines during the Relevant Period (but sometime before the April 19 payroll date). However, the record does not indicate that the Defendant has attempted to introduce the coal into interstate commerce since the lapse of the April 19 payroll deadline. Rather, the Secretary argues that the Defendant's decision to seek bankruptcy protection before paying its employees for work performed during the Relevant Period should lead the Court to believe that the Defendant will continue its noncompliance by further violating the FLSA's hot goods provision. Given the record presented thus far, the Court finds that the Secretary has not clearly shown an immediacy of irreparable harm as contemplated by the *Federal Rules*.

Further, the Secretary contends the entry of a TRO will encourage Ben's Creek to "remove the taint from the hot goods" by paying its employees. (*See* Mem. in Supp. at 19–20.) However, as the Secretary acknowledges, the Defendant has attempted to timely pay its employees by requesting authorization from the Bankruptcy Court to do so before the April 19 payroll date. The Bankruptcy Court has not granted such authorization and is scheduled to hold a hearing on this issue on May 8, 2024. Moreover, the very issues presented to this Court, relative to "hot goods" are, of course, legally related to the payment of employee wages, and are also currently pending before the Bankruptcy Court. The Defendant's attempt to resolve the matter and ostensibly remove any taint from its goods through the bankruptcy proceedings indicates to the Court that Ben's Creek is not likely to commit a further violation of the FLSA pending either the motion hearing in the Bankruptcy Court or a preliminary injunction hearing in this Court.[3] Accordingly,

---

3 Of course, should the circumstances change in the interim, the Secretary may renew her application for a TRO.

the Court denies the motion for a TRO but grants the Secretary's request to be heard regarding a preliminary injunction.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Acting Secretary of Labor's* Ex Parte *Motion for Temporary Restraining Order* be **DENIED** to the extent that the Secretary seeks a temporary restraining order, and **GRANTED** to the extent that the Secretary requests a hearing on her request for a preliminary injunction.

The Court **ORDERS** that a hearing on the Plaintiff's request for a preliminary injunction be scheduled for **May 10, 2024, at 10:00 a.m.**, in **Charleston, West Virginia**. It is further **ORDERED** that lead counsel and any unrepresented parties appear fully prepared to discuss the motion. Prior to the hearing, the parties are **DIRECTED** to file briefing on the issue, including the extent to which the pending bankruptcy case impacts the scope of preliminary relief available. Lastly, the Court **ORDERS** that all briefing be filed by **12:00 noon** on **May 7, 2024**.

The Court is mindful that this action was recently filed, and that the Defendant does not appear to have been served. Accordingly, the Court **DIRECTS** the Plaintiff to *immediately* serve a copy of this Order on the Defendant by personal service.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: May 2, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA